UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD EDWARD CAUDLE, CDCR #AB-6670,<br><br>         Plaintiff,<br><br>  vs.<br><br>CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION; RICHARD J. DONOVAN CORRECTIONAL FACILITY; E. FRIJAS; CORRECTIONAL OFFICER ROMERO; POLLARD; VAZQUEZ; VANDERWEIDE; MITCHELL; RODRIN; SCALLIA,<br><br>         Defendants. | Case No.: 3:20-CV-0098 JLS (LL)<br><br>**ORDER: (1) DISMISSING DEFENDANTS POLLARD, VAZQUEZ, VANDERWEIDE, FRIJAS, AND MITCHELL; AND (2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANTS ROMERO, RODRIN, AND SCALLIA** |

**I. Procedural History**

On January 13, 2020, Plaintiff Ronald Edward Caudle, proceeding pro se and currently housed at Atascadero State Hospital located in Atascadero, California, filed a Complaint pursuant to 42 U.S.C. § 1983 ("Compl." ECF No. 1), together with a Motion to Proceed *In Forma Pauperis* ("IFP") (ECF No. 2). Plaintiff claims prison officials at

Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, violated his Eighth and Fourteenth Amendment rights.

On March 10, 2020, the Court granted Plaintiff's Motion to Proceed IFP, dismissed Defendants California Department of Corrections and Rehabilitation ("CDCR"), RJD, and Frijas for failing to state a claim, and directing the United States Marshal Service ("USMS") to effect service of the Complaint upon Defendant Romero. (ECF No. 5.)

However, before Plaintiff served Defendant Romero, he filed a First Amended Complaint ("FAC") in which he once again named Defendant Frijas and added new Defendants Mitchell, Pollard, Rodrin, Romero, L. Vanderweide, P. Vazquez, and Scallia. (ECF No. 7.)

## II.  Screening Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A

### A.  Legal Standard

Because Plaintiff is a prisoner and is proceeding IFP, his FAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted.)

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his FAC. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss)).

### B.  *Plaintiff's Factual Allegations*

On July 18, 2019, Plaintiff was returning to his cell at RJD when he was "assaulted by three inmates." (FAC at 7.) One of the inmates "punched" Plaintiff in the face while the other two inmates "threatened [him] with homemade prison knives." (*Id.*) Plaintiff alleges these events all "transpired in front of Correctional Officer Romero who stood by watching and laughing while the incident occurred." (*Id.*) Romero then "instructed the correctional officer (Scallia) in the control tower to open [Plaintiff's] cell door." (*Id.*) When his cell door opened, Plaintiff claims, "one of the inmates ran into [his] cell" and took Plaintiff's property. (*Id.*) These inmates also purportedly told Plaintiff "right in front of Correctional Officer Romero that if [Plaintiff] tried to tell anyone about what happened, they would stab [Plaintiff]." (*Id.*) Plaintiff also claims that "all of this took place in front

///

of Correctional Officer Rodrin who stood by the podium in the dayroom, watching and laughing." (*Id.*)

A week prior to this incident, Plaintiff claims Romero "tried to question [him] in regard to [Plaintiff] being a witness in a criminal case against correctional officers at Pelican Bay State Prison in the mid 1990's and early 2000's." (*Id.* at 7.) Romero allegedly told Plaintiff that "inmates who told on officers ended up getting hurt." (*Id.*) Plaintiff further claims that one of the inmates who assaulted him "worked for Officer Romero as a porter." (*Id.*)

Plaintiff attempted to "tell several staff members including the Warden, only to have [his] request for an interview and inquiry into the matter go unanswered." (*Id.*) Plaintiff also claims that he filed an administrative grievance on August 29, 2019 that has "never been heard to this date." (*Id.*)

One week later, on July 25, 2019, Plaintiff approached Romero and told him that he "needed to be placed in administrative segregation to which he replied, 'take your bitch ass back to your cell.'" (*Id.* at 10.) Plaintiff "swallowed four razor blades and was taken to the outside hospital under suicide watch." (*Id.*)

Plaintiff claims that while he was at an outside hospital, his "personal property should have been secured by staff and placed in storage." (*Id.*) However, "Correctional Officers Romero, Rodrin, and Scallia failed to do their duties." (*Id.*) As a result, Plaintiff's property was "left unattended for two days before it was finally secured and inventoried." (*Id.*)

Plaintiff "appeared before Warden Pollard at an inmate classification hearing" on August 22, 2019. (*Id.* at 11.) Plaintiff informed Pollard "of the staff misconduct at the hands of Romero, Rodrin, and Scallia." (*Id.*) Plaintiff also "made him aware of the theft of [his] property." (*Id.*) Pollard told Plaintiff that "someone would come talk to [him] and that [his] claims would be taken seriously." (*Id.*) However, as of September 4, 2019, "no one had come to talk to [Plaintiff] so [he] wrote Warden Pollard a CDCR 22 form to find

///

1  out what was going on." (*Id.*)  However, Plaintiff "didn't receive a response." (*Id.*)
2  Plaintiff was transferred to Centinela State Prison on September 24, 2019. (*Id.*)

3  Plaintiff returned to RJD "after a suicide attempt" on October 15, 2019. (*Id.*)  On
4  October 22, 2019, Lieutenant Vanderweide "finally came to talk" to him and interview him
5  regarding his claims.  (*Id.*)  Plaintiff alleges that he tried to raise his claims regarding
6  Romero, Scallia, and Rodrin but Vanderweide informed him that he was "only interested
7  in talking about [his] missing property." (*Id.*)  Plaintiff was then transferred to the
8  California Health Care Facility ("CHCF") on October 26, 2019. (*Id.*)  Plaintiff was later
9  transferred to Atascadero State Hospital where he received a "memorandum from the
10 CDCR with Warden Pollard's signature on it . . . informing [Plaintiff] that an inquiry is to
11 be reopened." (*Id.*)

12 Plaintiff "received a letter" from Chief Deputy Warden Vazquez on November 18,
13 2019 regarding the "letter [Plaintiff] wrote to Warden Pollard" on September 3, 2019. (*Id.*
14 at 12.)  Vazquez claimed, "that he could find no merit to [Plaintiff's] claims of staff
15 misconduct." (*Id.*)  In addition, Vazquez purported claim that Plaintiff "refused to talk to
16 the investigative services unit" which Plaintiff disputes. (*Id.*)  Plaintiff alleges that
17 Vazquez, as well as the "RJD Appeals Coordinators, are "cover[ing] up their abuse of the
18 CDCR appeals system." (*Id.*)

19 Plaintiff alleges Defendant Frijas, a Correctional Counselor, "fabricated false
20 paperwork" in an "attempt to cover up the fact that the RJD Appeals Coordinators Office
21 had failed to meet the time restraints set forth by CDCR policy and Title 15." (*Id.* at 14.)
22 He further alleges Frijas was "well aware of the rampant corruption running amok within
23 RJD's walls." (*Id.*)

24 Months earlier, on August 1, 2019, Plaintiff was interviewed by Defendant Mitchell
25 regarding what happened on July 18, 2019 and July 25, 2019. (*See id.* at 15.)  Plaintiff told
26 Mitchell about Defendants Romero, Rodrin, and Scallia "allowing inmates to assault [his]
27 person and steal [his] property." (*Id.*)  Plaintiff claims Mitchell asked him if he "had
28 information about drugs or weapons on B Facility, saying it would help [his] cause." (*Id.*)

However, Plaintiff alleges he "never saw [Mitchell] again" and the "whole investigation was a sham and an attempt to cover up for officer misconduct." (*Id.*)

Plaintiff seeks injunctive relief, as well as compensatory and punitive damages. (*See id.* at 17.)

### C.    42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

### D.    Grievance Claims

Here, Plaintiff seeks to hold Defendants Pollard, Vazquez, Vanderweide, Frijas, and Mitchell liable for how they either purportedly failed to respond to his grievances, failed to adequately address his concerns raised in these grievances, or provided an untimely response to his grievances. However, a prison official's allegedly improper processing of an inmate's grievances or appeals, without more, cannot serve as a basis for section 1983 liability. *See generally Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (noting due process not violated simply because defendant fails properly to process grievances submitted for consideration); *Shallowhorn v. Molina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (finding district court properly dismissed section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860).

Therefore, the claims against Defendants Pollard, Vazquez, Vanderweide, Frijas, and Mitchell are **DISMISSED** from this action for failing to state a claim. In addition, because Plaintiff has already been provided a short and plain statement of his pleading deficiencies with regard to these claims in the Court's previous Order, the Court finds granting further leave to amend these claims would be futile. *See Gonzalez v. Planned*

*Parenthood*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

### E. Property claim

Once again, Plaintiff seeks to hold all Defendants liable for the loss of his personal property. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Ordinarily, due process of law requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest. *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1405 (9th Cir. 1989). Neither the negligent nor intentional deprivation of property states a due process claim under section 1983 if the deprivation was random and unauthorized. *Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property). The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (holding where state cannot foresee, and therefore provide meaningful hearing, prior to the deprivation, a statutory provision for post-deprivation hearing or a state common law tort remedy for erroneous deprivation satisfies due process); *King v. Massarweh*, 782 F.2d 825, 826 (9th Cir. 1986) (same). The Ninth Circuit has long recognized that California law provides such an adequate post-deprivation remedy. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

Deprivations of property resulting from negligence, or "mere lack of due care," do not deny due process at all and must be redressed through a state court damages action. *See Daniels*, 474 U.S. at 328 ("[T]he Due Process Clause is simply not implicated by a

negligent act of an official causing unintended loss of or injury to life, liberty, or property."); *id.* at 330 ("'To hold that this kind of loss is a deprivation of property within the meaning of the Fourteenth Amendment seems not only to trivialize, but grossly to distort the meaning and intent of the Constitution.'") (quoting *Parratt*, 451 U.S. at 545 (Stewart, J., concurring)). In fact, the Supreme Court has explicitly warned against turning the Fourteenth Amendment and § 1983 into a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *See Paul v. Davis*, 424 U.S. 693, 701 (1976).

Thus, because Plaintiff claims Defendants deprived him of personal property, any remedy he may have lies in state court. Therefore, Plaintiff's federal claims are DISMISSED for failing to state a claim upon which § 1983 relief may be granted. 28 U.S.C. § 1915(e)(2); *Lopez*, 203 F.3d at 1126-27. The Court also finds that amendment of these claims is futile and dismisses these claims without leave to amend. *See Gonzalez*, 759 F.3d at 1116.

### F.  *Eighth Amendment claims against Defendant Romero*

As currently pled, the Court finds the remaining claims in Plaintiff's FAC contains "sufficient factual matter, accepted as true," to state Eighth Amendment claims as to Defendants Romero, Rodrin, and Scallia that are "plausible on [their] face," *Iqbal,* 556 U.S. at 678, and therefore, sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (the Eighth Amendment "requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty [under the Eighth Amendment] . . . to protect prisoners from violence at the hands of other prisoners.")).

///
///
///

Therefore, the Court will direct the U.S. Marshal to effect service of summons Plaintiff's FAC as to Defendants Romero, Rodrin, and Scallia on his behalf.[1] *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

### III.    Conclusion and Orders

For all the reasons discussed, the Court:

1.    **DISMISSES** Plaintiff's claims against Defendants Frijas, Pollard, Vazquez, Vanderweide, and Mitchell *sua sponte* based on his failure to state a claim against them pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and **DIRECTS** the Clerk of the Court to terminate Frijas, Pollard, Vazquez, Vanderweide, and Mitchell as Defendants in this matter from the Court's docket.

2.    **DIRECTS** the Clerk to issue a summons as to Plaintiff's FAC (ECF No. 7) upon Defendants Romero, Rodrin, and Scallia and forward it to Plaintiff along with blank U.S. Marshal Form 285s for these Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of Order granting IFP status (ECF No. 5), certified copies of his FAC (ECF No. 7), and the summons so that he may serve them upon Defendants Romero, Rodrin, and Scallia. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, *include an address where Defendants Romero, Rodrin, and Scallia may be served*, *see* S.D. Cal. CivLR 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

///

---

[1] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

3. **ORDERS** the U.S. Marshal to serve a copy of Plaintiff's FAC and summons upon Defendants Romero, Rodrin, and Scallia as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

4. **ORDERS** Defendants Romero, Rodrin, and Scallia, once served, to reply to Plaintiff's FAC within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

5. **ORDERS** Plaintiff, after service has been affected by the U.S. Marshal, to serve upon Defendants Romero, Rodrin, and Scallia, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED**.

Dated: May 27, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge